1

ANTONIO A. JULIO
CLEOPATRA U. JULIO
3407 RIO BRAVO DRIVE,
SAN JOSE, CA 95148
(408) 693-9453

FILED

JUL 3 2014

E-FILING

ADR

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

#2
Pd
SI

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTONIO A. JULIO; CLEOPATRA U. JULIO;
individually,

Plaintiff,

Case No.:

CV 14.03059 HRL

**COMPLAINT**

10

11

v.

**FOR ILLEGAL RECORDING OF
SUBSTITUTION OF TRUSTEE &
CORPORATE ASSIGNMENT OF DEED
OF TRUST; FRAUD, MISLEADING,
INTENTIONAL MISREPRESENTATION,
CONSPIRACY; UNFAIR DECEPTIVE
BUSINESS PRACTICES ACT FOR
MAKING A FALSE DOCUMENT;
SUMMONS**

12

13

ONEWEST BANK, FSB; JOHN AND JANE
DOE; CORPORATIONS OR OTHER
ENTITIES and DOES 1-100 inclusive.

14

15

16

Defendant.

**Jury Trial Demanded**

17

18

**EXHIBIT "A", "B" & "C"**

19

20

21

22

23

24

**INTRODUCTION**

25

COMES NOW the Plaintiffs' ANTONIO A. JULIO and CLEOPATRA U. JULIO

26

(hereinafter referred to as "Plaintiffs"), alleges as follows:

27

28

## PARTIES

1.  At all times relevant herein, Plaintiffs was over the age of eighteen and is a resident of the County of Santa Clara, State of California.

2.  Plaintiffs' are informed and therefore alleges that Defendant, a Business Entity, is a corporation, authorized to do business in the California.

3.  Defendant ONEWEST BANK, FSB is located at 888 E. Walnut Street, Pasadena CA 91101.

4.  Plaintiffs' are informed and therefore believe, and on that basis allege that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged. Plaintiffs' will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained or if any.

## ALLEGATIONS OF PLAINTIFFS CASE

5.  On December 16, 2003, Plaintiffs' Antonio A. Julio and Cleopatra U. Julio, husband and wife executed a loan in the amount of $377, 600.00 to the Lender, **First Federal Bank of California**. It was recorded on 12/30/2003, Doc. No. 17551668, recorded in Santa Clara County, CA. The Trustee was **SEASIDE FINANCIAL CORPORATION,** attached hereto is **Exhibit "A".**

6.  On 9/03/2009, a Substitution of Trustee was recorded in the Santa Clara, County, CA, Doc. No. 20421615, executed by Bethany Hood, claimed to be an Assistant Secretary of IndyMac Bank, FSB. Such Substitution of Trustee explained that **New Century Title Company** was **the Original Trustee** of the Plaintiffs' account, and **Mortgage Electronic Registration**

**Systems** was the original beneficiary. Attached hereto, **Exhibit "B"**.

7. Plaintiffs' contract with First Federal Bank of California was never mentioned about New Century Title Company as Trustee and **"NEVER" mentioned** about Mortgage Electronic Registration Systems see EXHIBIT "A", paragraph 5.

8. The Substitution of Trustee was fabricated, forged, false, document on which consists misleading or creating false document which in violations of **U.S.C §1001** for making a false document.

9. On April 26, 2010, The Defendant, ONEWEST BANK, FSB hired NTC (Nationwide Title Clearing) to record an illegal Corporate Assignment of Deed of Trust.

10. Plaintiffs' rely on the defense that the fabricated Corporate Assignment of Deed of Trust recorded in the County of Santa Clara, California, document no. 20689304, recorded on April 26, 2010 was a false, phony, fraud or fabricated. Attached hereto, **EXHIBIT "C"**.

11. Defendant ONEWEST BANK, FSB misrepresented the elements of the alleged Corporate Assignment of Deed of Trust, that there is no bona fide signature on the alleged such assignment of deed of trust.

12. Bryan Bly who executed the Corporate Assignment of Deed of Trust was unlawful, based on the fact that he has no authority or he is not an official employee of Federal Deposit Insurance Corporation.

13. Nationwide Title Clearing who recorded the Corporate Assignment of Deed of Trust as stated in paragraph 5 was a "false", fabricated and forged document.

14. Bryan Bly is actually an employee of Nationwide Title Clearing, located at 2100 Alt., 19 North Palm Harbor, FL 34683.

15. Bryan Bly is a "Robo Signer" who's well known of signing a documents who he has no

knowledge about the Plaintiffs' account.

16.     **Bryan Bly's signature** varies significantly on documents. He signs as an officer of many different mortgage companies. He often signs to assign mortgages to trusts many years after the closing date of the trusts. Bly testified in a July 2010 foreclosure case in Florida that he signed up to 5,000 mortgage assignments per day at the loan-servicing company. Although he is an employee of Nationwide, he signed the documents as a "vice president" of Option One Mortgage, Deutsche Bank, CitiBank and other institutions. (Case # 2009-CA-1920, Circuit Court of the Fourth Judicial District, Clay County, FL).

17.     In his deposition, Bly said Nationwide multiplied his output by electronically stamping his signature on additional mortgage assignments that Bly said he never saw. He testified, too, that all the documents then were falsely notarized. Nationwide's notaries were given stacks of the already-signed documents, he said, and attested falsely that Bly had signed the legal papers in front of them. Bly said he didn't verify the information in the papers he signed, and that he didn't understand key words and expressions in them. On thousands of documents, a California or North Carolina address is listed directly under Bly's name to help conceal his true employer. In a Texas case involving an Assignment signed by Bryan Bly, a Texas Court denied an Application for Order for Foreclosure on January 25, 2010, after the homeowner responded to the application with allegations of fraud based in part on the conduct of Bly. See, *In re Order for Foreclosure Concerning Geoffrey Wilner, Cause No. 96-239885-09, District Court for Tarrant County, Texas, 96thJudicial District*. Susan Taylor Martin, St. Petersburg Times Correspondent, wrote an article about Bly and Nationwide Title on June 20, 2010 and on May 3, 2009. Bly has used the following job titles:

a)   Vice President, American General Home Equity, Inc.;

b) Vice President, CitiBank, FSB by CitiMortgage, Inc., f/k/a Citicorp Mortgage, Inc., Its Attorney in Fact.

c) Attorney-in-fact-for ONEWEST BANK, FSB

d) Attorney-in-fact for FDIC.

e) Notarized multiple assignment of mortgage or assignment of deed of trust.

18. Defendants rely upon the defense of fraud committed by the Plaintiff named above who is not the real party of interest, as the purported Corporate Assignment of Deed of Trust has been fabricated. Attorney Generals in 45 states have sued five (5) servicing companies under the case # 1:12- CV-00361-RMC, and settled 25 billion dollars caused by fraudulent and predatory lending practices of the banks including Unfair Deceptive Act Practices ("UDAP"), and who "...have charted a destructive path by cutting corners and rushing to foreclose on homeowners without following the rule of law," and much more.

19. Plaintiff has lack of standing collect on the subject property located at 3407 Rio Bravo Drive, San Jose, CA 95148 , as they are not the Note holders of the subject property. Defendants executed a series of documents, including a note ("Note") and a mortgage ("Mortgage") securing the Property in the amount of the Note. Since the Mortgage and the Note were executed by Defendants in favor of the original lender, any subsequent interest in the Note requires the Note and Mortgage to be properly assigned in order to secure any transfer to another party, including party(s) such as Plaintiff or to any trust ("Trust") in accordance with the Pooling Service Agreement ("PSA") of the entity making and receiving such assignments to such Trust. For this to occur, the Note would have be endorsed and assigned, respectively, to the Trust and executed by multiple intervening parties before it reached the Trust. Here, neither the Note nor the Mortgage was assigned to the Securitized Trust by the required

closing date. The mortgage loans were turned into securities, or bonds, and sold to investors by Wall Street and other firms.

20.   *"There are many outstanding questions about the persons, who executed the assignment of mortgage whether he or she was present during the notary public signing, and whether he or she actually read and personally reviewed the information in the documents that were executed and does he or she really hold a valid position the Vice President of MERS? Defendants and Attorneys General throughout the United States are well aware of the unlawful practice of "ROBO SIGNING" and the creation of document fabricators such as Lending Processing Services ("LPS") and DOCX, well known fabricators of forged assignment papers. These companies were <u>raided by the FBI</u> after the companies had hired thousands of robo-signers, some of them teenagers and provided them with fake names with which to sign and forge the fake assignment of mortgages. As many as four (4) thousand documents per day were being forged without the presence of the notary public, all attempting to defraud homeowners, attorneys, judges and the public by acting as if they held valid assignments. Attorneys have since jumped in on the action by filing similar forged documents on behalf of Plaintiffs without verifying their validity and then recording the forged assignments and pendency actions with the Bureau of Conveyances, all which falsely assert their clients claims of ownership followed by improper foreclose on homeowners property. Even though such activity is illegal and there is no lawful standing to pursue such actions, many attorneys have continued pursuing the gimmick."*

21.   Plaintiffs are further informed and believe, and thereon allege, that the purported assignments and transfers of Plaintiffs debt or obligation did not comply with New York law, and/or other laws and statutes, and, thus, do not constitute valid and enforceable "True Sales." Any security interest in the Property was, thus, never perfected.  The alleged holder

of the Mortgage and Note is not the beneficiary of the Deed of Trust.  The alleged

beneficiary of Plaintiffs' Deed of Trust does not have the requisite title, perfected security

interest or standing to proceed; and/or is not the real party in interest with regard to any

action taken or to be taken against the Property and to collect a debt.

22.  Plaintiffs' are also informed and believe, and thereon allege, that at all times herein

mentioned, and any assignment of a Deed of Trust without proper transfer of the obligation

that it secures is " nullity".

23.    As a result of Defendant's illegal activity, defendant is subject to damages to Plaintiffs'

including the Unfair Deceptive Business Practices Act.

24.  Therefore, Defendant's activity is unlawful and therefore the contract is "void", in that the

defendant have no power under charter to do what they try to collect or to pursue any

foreclosure proceeding." The contract is void if it is only in part connected with the illegal

transaction". See, *Guardian Agency v. Guardian Mut. Savings Bank, 227 Wis 550, 279

NW83."*

## PRAYER FOR RELIEF

1.  For determination that Plaintiff' are  the rightful holder of title to the property and that

Defendant  herein, be declared to have no estate, right, title or interest in said property.

2.  To expunged the purported Substitution of Trustee or Corporate Assignment of Deed of

Trust.

3.  For Compensatory Damages in an amount to be determined by proof at trial.

4.  For Special Damages in an amount to be determined by proof at trial.

5.  For General Damages in an amount to be determined by proof at trial.

6.  Any other and further relief that the Court considers just and proper

1

2    Dated: July 3, 2014, San Jose, CA

3

4

5

6

7          Respectfully Submitted,

8          _____

9          Antonio A. Julio

10

11         Cleopatra U. Julio

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

| WHEN RECORDED MAIL TO: | DOCUMENT:   17551668 | Pages: 10 |
|---|---|---|

**FIRST FEDERAL BANK OF CALIFORNIA**
401 Wilshire Boulevard / LOAN SERVICE
Santa Monica, California 90401

Loan No. 49604550
Title Order No. 1222396

*2026872 -VA*

| | Fees.... | 50.00 |
|---|---|---|
| | Taxes... | |
| | Copies.. | |
| | AMT PAID | 50.00 |

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
First American Title Company

RDE # 012
12/30/2003
8:00 AM

Space above this line for recorder's use

---

[ ] CONSTRUCTION  [XX] NON-CONSTRUCTION
Deed of Trust and Assignment of Rents
**ADJUSTABLE INTEREST RATE LOAN**

**THE NOTE SECURED BY THIS DEED OF TRUST PROVIDES FOR CHANGES IN THE INTEREST RATE AND MONTHLY PAYMENTS AND MAY PROVIDE FOR THE ADDITION OF UNPAID INTEREST TO PRINCIPAL (NEGATIVE AMORTIZATION). SEE THE NOTE DESCRIBED BELOW FOR FULL DESCRIPTION OF LOAN TERMS.**

THIS DEED OF TRUST IS MADE ON          December 16, 2003                              The trustor is

**Antonio A. Julio and Cleopatra U. Julio, husband and wife**

("Borrower"). The trustee is SEASIDE FINANCIAL CORPORATION ("Trustee"). The beneficiary is FIRST FEDERAL BANK OF CALIFORNIA, a federally chartered savings bank and whose address is 401 Wilshire Boulevard, Santa Monica, California 90401 ("Lender", "Note Holder" or" Beneficiary").

Borrower owes Lender the principal sum of
THREE HUNDRED SEVENTY-SEVEN THOUSAND SIX HUNDRED AND          Dollars (U.S. $ 377,600.00).
This debt is evidenced by Borrower's note dated the same date as this Deed of Trust ("Note") which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **January 1, 2034**. This Deed of Trust secures to Lender: (a) the repayment of the debt evidenced by the Note with interest and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Deed of Trust; (c) the performance of Borrower's covenants and agreements under this Deed of Trust and the Note; (d) the performance, if the loan secured by this Deed of Trust is a construction loan, of Borrower's covenants and agreements contained in a construction or building loan or similar agreement; (e) the performance, if the security property is subject to a lease, of the terms and conditions of any such lease; (f) compliance with the terms of any Declaration of Covenants, Conditions and Restrictions or similar instruments pertaining to the security property; (g) the performance of any agreement of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and (h) the payment of charges allowed by law for any statement regarding the obligation secured by this Deed of Trust.
For this purpose and otherwise for valuable consideration, Borrower irrevocably grants, transfers, assigns and conveys to Trustee, in trust with power of sale, in the case of a lease, the leasehold estate in and to the property described below, and the following described property located in **Santa Clara** County, California:

LOT 44, AS SHOWN ON THAT CERTAIN MAP ENTITLED "TRACT NO. 4173 CASE SERENA", WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON NOVEMBER 06, 1967 IN BOOK 229 OF MAPS AT PAGE(S) 48 AND 49.

652-20-028-
Which has the address of    **3407 Rio Bravo Drive , San Jose, CA  95148**

                                                                                        ("Property Address")

**FUTURE TAX STATEMENTS MAY BE MAILED TO BORROWER AT THE ADDRESS SHOWN ABOVE**

FUN 20101 (2003-11-21)                                                                  Exhibit B

Loan No. 49804550

...THER WITH all the improvements now or hereafter erected on the property and all present and future easements, rights, of way, appurtenances, rents, royalties, leases, mineral, oil and gas rights and profits, water rights and stock and all fixtures hereafter made a part of the property. The following items are added to the Property description, and shall also constitute the Property covered by this Deed of Trust: building materials, appliances and goods of every nature whatsoever now or hereafter located in, used, or intended to be used in connection with the Property, including, but no limited to, those for the purposes of supplying distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, dispo washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabir paneling and attached floor coverings now or hereafter attached to the Property.   All replacements and additions are also covered this Deed of Trust.   Borrower agrees to execute and deliver, if requested by Lender, any further instruments necessary to confirm lien of this Deed of Trust on any equipment. All of the foregoing is referred to in this Deed of Trust as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey a, assign the Property (and, if this Deed of Trust is on a leasehold, that the ground lease is in full force and effect without default on th part of either lessor or lessee thereunder), that the Property is unencumbered, except for encumbrances of record, and that Borrow will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restriction listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, BORROWER AGREES AS FOLLOWS:

(1) **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any other charges provided in the Note and all other sums secured by this Deed of Trust.

(2) **Construction of Improvements.** Borrower will complete in a good and workmanlike manner any building or improvement or repair which may be begun on the Property, pay any costs incurred when due, and not permit any mechanic's lien against the Property nor any stop notice against loan proceeds.

(3) **Preservation and Maintenance of Property; Nuisance; Duty to Protect; Leaseholds.** Borrower shall not destroy, damage, or substantially change the Property, allow the Property to deteriorate, or abandon the Property. Borrower shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Specifically without limitation, Borrower will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender. Borrower agrees neither to abandon nor leave unattended the Property. Borrower shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property. If this Deed of Trust is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

(4) **Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured at all times against loss by fire, hazards included within the term 'extended coverage' and any other hazards for which Lender (and, if this Deed of Trust is on a leasehold, the ground lease) requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires, with loss payable to Lender. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be subject to the approval of Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender, whether or not such insurance was required by Lender. All insurance procured by or for the benefit of Borrower pertaining to the Property, whether such insurance is required by Lender or not, shall name Lender as the loss payee. Lender shall have the right to hold all policies and renewals. Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event that Borrower obtains any new insurance policies or coverage pertaining to the Property, Borrower shall promptly notify Lender and promptly provide copies of said items. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

At least 30 days prior to the expiration of any insurance policy, Borrower shall obtain and deliver to Lender written evidence of the payment of the renewal premium. If Borrower does not deliver such evidence to Lender or if the insurance is terminated, Lender is specifically requested by Borrower to obtain insurance and include the cost as an amount due pursuant to the Note. Lender is not obligated to obtain the insurance, but if it does so, it may obtain the insurance from any insurance agency or company acceptable to it. If the Lender does obtain such insurance, the Borrower shall reimburse all sums advanced together with interest thereon at the rate of interest due according to the Note, with such reimbursement all due and payable with the next scheduled monthly payment due on the Note. The Borrower is hereby made aware of the fact that any substitute or replacement insurance procured by the Lender will likely cost much more than the insurance which could be procured by the Borrower.

Unless Lender and Borrower otherwise agree in writing, all insurance proceeds (whether or not the policy or provision was required by Lender) shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sum secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when the notice is given.

If under paragraph 14 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the Borrower's monthly payments or change the amount of the payments.

Exhibit B

Loan No. 49604550

(5) **Life, Health, or Accident Insurance.** If Borrower maintains life, accident or health insurance and Lender is the owner or holder of any policy of such insurance as further security hereunder. Lender may elect to pay any premiums if Borrower does not make the payment, and any amount so paid shall be secured hereby.

(6) **Taxes and Other Sums Due; Liens.** Borrower shall timely pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 7, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

If Borrower fails to make any such payment, Lender, without contesting the validity or amount, may make the payment together with any related costs, expenses, fees, or charges, and thereafter enforce all rights relating to said payment as provided to Lender by this Deed of Trust or by law. Borrower agrees to notify Lender and appropriate taxing authorities immediately upon the happening of any event which does or may effect the value of the Property, the amount or basis of the Property, or the availability of any exemption to which Borrower may be entitled, if any law is passed deducting from the value of real property for tax purposes any lien thereon, or changing in any way the laws for the taxation of deeds of trust or debts secured by deed of trust for state or local purposes, or the manner of the collection of any such taxes, including, but not limited to, the postponement of the payment of all or any part of any real or personal property taxes, which would affect this Deed of Trust, the holder of this Deed of Trust and the Note which it secures shall have the right to declare the principal sum and the interest due; provided, however, that such election shall be ineffective if Borrower is permitted by law to pay the whole of such tax in addition to all other payments required hereunder and if, prior to such specified date, does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall be a modification of this Deed of Trust. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Deed of Trust, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien within ten days of the giving of notice.

(7) **Impounds.** Subject to applicable law and if Lender so requests, Borrower shall pay to Lender on the day monthly payments are due under the Note until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Deed of Trust; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called 'Impounds'. Lender may estimate the Funds due on the basis of current data and reasonable estimates of future impounds.

The Funds may be intermingled with other monies of Lender, and shall not bear interest except as required by law. If Lender requires Impounds due to Borrower's failure to timely make payments pursuant to paragraph 6, Borrower acknowledges and agrees that no interest shall be paid by Lender on such Funds. Lender shall apply the Funds to pay the Impounds. Lender shall give to Borrower all reports of Impounds as required by law. The Funds are hereby pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the Impounds, shall exceed the amount required to pay the Impounds when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments. If the amount of the Funds held by Lender is not sufficient to pay the Impounds when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender. Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 14 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

(8) **Assignment of Awards and Damages to Lender.** Borrower assigns to Lender all sums due, paid, or payable, (a) for injury to the Property; or (b) in connection with this loan transaction. Lender may, at its option, begin, intervene in, appear in or prosecute in its own name, any legal action, or make any compromise or settlement in connection therewith. If required by Lender, Borrower agrees to execute further assignments of any such compensation, award, damages, rights of action and proceeds.

(9) **Protection of Lender's Security.** If borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of funds and attorneys' fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 4 hereof, and (iv) if this Deed of Trust is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default by Borrower in the terms and conditions of the ground lease. Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.

(10) **Condemnation.** The proceeds of any award or claim for damages, direct or indirect, in connection with any condemnation action or proceeding, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to Lender, subject, if this Deed of Trust. Said application shall not cure or waive any default or notice of default nor invalidate any act done because of such notice, nor shall said application change the due date or amount of the monthly payments due on the Note secured by this Deed of Trust.

(11) **Failure of Borrower to Comply with Deed of Trust.** If Borrower fails to make any payment or do any act provided in this Deed of Trust, Borrower will be in default.

(12) **Sums Advanced To Bear Interest.** Any sums advanced by Lender under this Deed of Trust will be secured hereby and will bear interest from the date advanced at the same rate as the debt secured by this Deed of Trust.

(13) **Application of Payments.** Subject to the terms of the Note, Lender has the right to determine how payments received will be allocated among the various items which make up Borrower's obligations to Lender.

Exhibit B

Loan No. 49604550

(14) **Acceleration Clause; Right to Declare Sums Due.** Irrespective of the maturity date specified in any note or agreement pertaining to any indebtedness secured hereby, Lender shall have the right, at its option, to declare an indebtedness and obligations secured hereby immediately due and payable upon such declaration if: (a) Borrower is in default; or (b) Borrower or any successor in interest to Borrower of such Property sells, enters into a contract of sale, conveys or alienates such Property or any part thereof, or suffers his title or any interest to be divested, whether voluntarily or involuntarily or leases such Property or any part thereof for a term of more than 3 years, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property; or (c) Borrower is a partnership and the interest of a general partner is assigned, transferred, or inherited; or (d) Borrower is a corporation and more than 25% of the corporate stock thereof is sold, transferred or assigned during a 12 month period; or (e) Borrower is a trust and there is a change of beneficial interest with respect to more than 25% of such property; or (f) Borrower has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Borrower in order to induce Lender to enter into the transaction evidenced by the Promissory Note or notes or agreements which this Deed of Trust secures, or (g) the insolvency of Borrower, appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower, or the dissolution or termination of Borrower's existence as a good business (if Borrower is a business), or (h) any breach by Borrower under the terms of any other agreement between Borrower and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower to Lender, whether existing now or later, or (i) Lender deems itself to be financially insecure as to this transaction.

(15) **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

(16) **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** This Deed of Trust shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14. Borrower's covenants and agreements shall be joint and several. Any person who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey that person's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that person's consent.

(17) **Legislation or Regulation Affecting Lender's Rights.** If enactment or expiration of applicable laws or regulations has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted herein. If Lender exercises this option, Lender shall take the steps specified in paragraph 24.

(18) **Governing Law; Severability.** The Note and this Deed of Trust shall be governed by the laws, rules and regulations of the United States including, without limitation, the laws, rules and regulations relating to federally chartered savings banks, provided, however, that, to the extent that the Note and this Deed of Trust shall be deemed to be governed by state law, the Note and this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

(19) **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

(20) **Right to Collect Rents and Profits/Assignment of Leases.** If Borrower is in default hereunder, Lender (in person, by agent, or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the property, and to collect the rents of the Property (including but not limited to those past due). Any rents collected by Lender or the receiver shall be applied first to costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph the word "lease" shall mean "sublease" if the Deed of Trust is on a leasehold.

(21) **Remedies.** No remedy provided by this Deed of Trust is exclusive of any other remedy allowed by law or any other writing. Instead, to the extent permitted by law, all remedies available to Lender by contract or law shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy. Without limitation, Lender reserves the right to judicially foreclose upon the Property and obtain a judgment against Borrower for any unpaid deficiency, where permitted by law.

(22) **Power of Trustee.** At Lender's request, Trustee may: (1) release any debt; (2) extend the time or alter other terms of payment of such debt; (3) accept additional security; (4) substitute or release any security property; (5) recover all or part of any security property; (6) consent to the making of any map or plat; (7) join in granting any easement on the Property; or (8) join in any extension or subordination agreement. Any such act by Trustee will not affect Borrower's liability for the payment of the debt secured by this Deed of Trust, nor will it affect the lien of this Deed of Trust on the remainder of the Property for the full amount of Borrower's debt to Lender.

(23) **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it, and may charge such fees for each full or partial reconveyance of this Deed of Trust then customarily charged for such services.

Exhibit B

Loan No. 49604550

(24) **Default; Acceleration; Trustee's Sale upon Default.** For purposes of paragraph 14 and this paragraph 24, a "default" by Borrower shall mean a failure by Borrower to pay any monthly installment under the Note when due, or otherwise perform any obligation required by the Note, or a breach or default by Borrower of any of the provisions of the Deed of Trust, or a breach or default by Borrower under any other Deed of Trust, or other instrument secured by the property described in the Deed of Trust. Pursuant to paragraph 14 and this paragraph 24, in the event of a default by Borrower the entire principal amount outstanding under the Note and Deed of Trust and accrued interest thereon and late charges and other costs shall at once become due and payable at the option of the Note Holder without prior notice and regardless of any prior forbearings. Upon such a default by Borrower, Lender at its option may deliver to Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property described in the Deed of Trust. Lender shall also deposit with the Trustee the Deed of Trust and any notes and all documents evidencing expenditures secured thereby. If Lender invokes the power of sale and after the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, without demand on Borrower, Trustee may sell such Property at the time and place fixed by such Trustee and such notice of sale, either as a whole or in separate parcels, and in such order as the Trustee shall determine (subject to such rights as Borrower may have at law to direct such order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of such property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof. Any person, including Borrower, Trustee or Lender, may purchase at such sale. After deducting all costs, fees and expenses of Trustee, and of this Deed of Trust, including costs of evidence of title in connection with such sale, Trustee first shall apply the proceeds of sale to payment of all sums expended under the Deed of Trust, not then repaid, with accrued interest at the rate then payable under the Note or notes secured thereby, and then to payment of all other sums secured thereby and, if thereafter there be any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

(25) **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the instrument number and recording date where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law.

(26) **Waiver of Statute of Limitations.** Time is of the essence in all of Borrower's obligations. To the extent permitted by law, Borrower waives all present or future statutes of limitations with respect to any debt, demand or obligation secured by this Deed of Trust, in any action to enforce this Deed of Trust.

(27) **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. The right of inspection shall include, but is not necessarily limited to, the right to conduct tests upon and take samples of the soil, the air, and all other chemicals contained on the Property, within the subsurface of the Property, and in the air located upon the Property. If the Property is used for commercial or residential income purposes, at Lender's request Borrower shall deliver to Lender certified copies of all business records, a certified statement of gross and net annual income received from the Property during Borrower's previous fiscal year in such form and detail as Lender shall require, and any other financial statements or records relating to the Property.

(28) **Offsets.** No indebtedness secured by this Deed of Trust shall be deemed to have been offset or to be offset or compensated by all or part of any claim, cause of action, counterclaim or crossclaim, whether liquidated or unliquidated, which Borrower now or hereafter may have or may claim to have against Lender; and, in respect to the indebtedness now or hereafter secured hereby, Borrower waives, to the fullest extent permitted by law, the benefits of California Code of Civil Procedure Section 431.70 (and any successor laws), which Section provides:

> "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in his answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a 'demand for money' and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred with Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9."

(29) **Misrepresentation or Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which the Deed of Trust secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice, shall have the right to declare the indebtedness secured by the Deed of Trust, irrespective of the maturity date specified in the Note or notes, immediately due and payable. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

(30) **Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

(31) **Notices.** Any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing it by first class mail, unless another method is required by law. The notice shall be sent to the Property address unless Borrower designates by notice a different address. Any notice to Lender must be given by first class mail to Lender's address stated above unless Lender designates a different address. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph, provided customary time for mail delivery shall have passed before such presumption is effective.

Exhibit B

FUN 20105 (2003-11-12)

Loan No. 49604550

(32) **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

(33) **Modification.** This Deed of Trust can only be modified in writing and signed by Borrower and Lender.

(34) **Loan Charges.** If a law, which applies to the loan secured by this Deed of Trust and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with such loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit.

(35) **Attorneys' Fees.** Borrower agrees to pay the following costs, expenses and attorney's fees paid or incurred by Note Holder: (1) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in connection with the collection, enforcement or interpretation of the Note or this Deed of Trust, whether or not suit is filed; (2) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in workout negotiations or modifications; and (3) costs of suit and attorneys; fees in such sum as the court may adjudge in any action to enforce payment of this Deed of Trust or any part of it.

(36) **Security Agreement; Financing Statements.** The following provisions relating to this Deed of Trust as a security agreement are hereby made a part of this Deed of Trust:
Security Agreement. This instrument shall constitute a security agreement to the extent any of the Property (a) constitutes fixtures, or (b) personal property of Borrower is located upon the Property, and such personal property is used to operate or maintain the Property. Lender shall have all of the rights of a secured party as to said items under the Uniform Commercial Code as amended from time to time.
Security Interest. Upon request by Lender, Borrower shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the rents, fixtures and personal property. Borrower shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Borrower shall assemble the personal property in a manner and at a place reasonably convenient to Borrower and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.
Addresses. The mailing addresses of Borrower (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

(37) **Hazardous Substances.** Borrower represents and warrants that, so long as this Deed of Trust remains a lien on the Property, the Property never has been, and never will be, used for the generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Section 9601, et seq., ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99,499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et. seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., the Clean Water Act, 33 U.S.C. Section 466 et. seq, the Safe Drinking Water Act, 17 U.S.C. Section 1401 et. seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601 Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 13000 and 25100, et. seq., and as subsequently amended, or other applicable state or Federal laws, rules or regulations. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Property for hazardous waste. Borrower hereby (a) releases and waives all claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify, defend and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to and/or during Borrower's ownership or interest, in the Property, whether or not the same was or should have been known to Borrower. The provisions of this section of the Deed of Trust, including the obligations to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

(38) **Compliance With Laws.** Borrower warrants that the Property and Borrower's actual or intended use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

(39) **Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

(40) **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

(41) **Assumptions.** During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a creditworthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the same at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower. This paragraph 41 shall be effective only if a substantially similar provision is contained in the Note secured by this Deed of Trust.

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (i) a unit in, together with an undivided interest in the common elements of, a condominium project ("Condominium Project") or (ii) a parcel of land improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit development ("PUD"), Borrower and Lender further covenant and agree as follows:

FUN 20108 (2003-11-12)                                Page 6                                **Exhibit B**

Loan No. 49604550

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (i) a unit in, together with an undivided interest in the common elements, of a condominium project ("Condominium Project") or (ii) a parcel of land improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit development ("PUD"), Borrower and Lender further covenant and agree as follows:

(a) **Assessment and Obligations.** Borrower shall promptly pay, when due, all assessments imposed by the Owner Association, Homeowners' Association, or other governing body of the Condominium Project or PUD ("Owners' Association"). Borrower shall perform all of Borrower's obligations under the provisions of the Declaration, Trust instrument, Articles of Incorporation, By-laws, Code of Regulations or other constituent document of the Condominium Project or PUD (the "Instrument").

(b) **Hazard Insurance.** In the case of a Condominium Project, so long as the Owners' Association maintains a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term 'extended coverage' and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then: (1) Borrower's obligation under paragraph 4 hereof to maintain hazard insurance coverage on the Property is deemed satisfied; and (2) the provisions of paragraph 4 hereof regarding application of hazard insurance proceeds shall be superseded by any provision of the Instrument or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4 hereof. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage.

In the case of a Condominium Project or PUD, in the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss, in the case of a Condominium Project, to the Property, whether to the unit or to common elements, or, in the case of a PUD, to the common areas and facilities of the PUD, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.

(c) **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

(d) **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the common areas and facilities, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sum secured by this Deed of Trust in the manner provided in paragraph 10 hereof.

(e) **Lender's Prior Consent.** Borrower shall not, except with notice to Lender and with Lender's prior written consent, consent to: (1) the abandonment or termination provided by law in the case of substantial disruption by fire or other casualty or in the case of a taking by condemnation or eminent domain; (2) any material amendment to the Instrument of the Condominium Project or PUD, including, but not limited to, any amendment that would change the percentage interest of the unit owners in the common areas and facilities of the Condominium Project or PUD; (3) the effectuation of any decision by the Owners' Association to terminate professional management and assume self-management of the Condominium Project or PUD; (4) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lenders; or (5) in the case of a PUD, the transfer, release, encumbrance, partition or subdivision of all or part of the PUD's common areas and facilities, except as to the Owners' Association's right to grant easements for utilities and similar or related purposes.

(43) **Construction Loan Provisions.** If all or any portion of the proceeds of the loan secured by this Deed of Trust are to be used for construction of improvements on the Property covered by the Deed of Trust, the following additional provisions shall apply unless otherwise specified in the Note; Borrower agrees: (1) to commence construction promptly and in any event within thirty (30) days from recordation of the Deed of Trust, and to complete the same in accordance with plans and specifications satisfactory to Lender and to comply with all the provisions of the building loan or similar agreement entered into with Lender; (2) to allow Lender to inspect the security property at all times during construction; (3) to replace any work or materials unsatisfactory to Lender within fifteen (15) calendar days, after notice from Lender of such fact, which notice may be given to Borrower by registered or certified mail, sent to Borrower's last known address, or by personal service of the same; (4) not to suffer or permit any cessation of work on the construction of such improvements for any reason whatsoever for a period of fifteen (15) calendar days, whether consecutive or not without the written consent of Lender; and (5) to promptly pay all claims for labor performed and materials furnished in connection with the said construction and not to permit any claims or lien for said work or material to be filed of record against the security property. If the security property is a part of a larger tract upon which improvements shall be constructed, Borrower shall make separate contracts and subcontracts for said construction which shall pertain to the security property only and shall keep separate, full and complete records of all work and materials furnished to such property. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive the facts and statements therein, and to act thereon hereunder.

(44) **Adjustable Rate Mortgage Provisions.** The Note secured by this Deed of Trust may contain provisions that permit: (i) increases and decreases to the rate of interest provided in the Note on a periodic basis, (ii) increases and decreases to the monthly payment of principal and interest on a periodic basis; (iii) limitations on increases in the rate of interest, and may contain provisions that permit; (iv) limitations on increases and decreases in the monthly payment of principal and interest on a periodic basis; and (v) additions of unpaid interest to the outstanding principal balance of the loan evidenced by the Note, with interest thereon. Reference is made to the Note for a complete description of the adjustable rate terms of the indebtedness secured by this Deed of Trust.

(45) Borrower shall not, without prior written consent of Lender, consent to or vote in favor of the establishment, approval or creation of, or incorporation of the Property into, any Community Facilities District, Mello Roos District, or any other district or organization in which public improvements are financed via bonds or public funds, and repaid by the landowner. Borrower further agrees to provide prompt written notice to Lender immediately upon receipt of any information which indicates that the Property is or may in the future be included in any Community Facilities District, Mello Roos District, or any other district or organization in which public improvements are financed via bonds or public funds, and repaid by landowners.

Exhibit B

Loan No. 49604550

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by Borrower and recorded with it.

**BORROWER(S):**

_____
Antonio A. Julio

_____
Cleopatra U. Julio

Exhibit B

# ACKNOWLEDGMENT

STATE OF _CALIF._ )
                                         ) SS.
COUNTY OF _SANTA CLARA_ )

On _DEC. 19, 2003_, before me, _HELEN M. GAGNON_,

personally appeared _ANTONIO A. JULIO_

_AND CLEOPATRA U. JULIO_

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is/~~are subscribed to the within instrument and acknowledged to me that ~~he/she/~~they executed the same in ~~his/her/~~their authorized capacity(ies), and that by ~~his/her/~~their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Helen M. Gagnon_ (Seal)

This Certificate must be attached to:

Title or type of Document: _D/T_

Number of pages: _____

Date of document: _____

Signer(s) other than named above: _____

ACKNOW (2003-10-24)

Exhibit B

# EXHIBIT "B"

DOCUMENT: 20421615      Pages:   3

Fees....     18.00
Taxes
Copies..
AMT PAID     18.00

Recording Requested By

When recorded, mail to:

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

REGINA ALCOMENDRAS     RDE #   001
SANTA CLARA COUNTY RECORDER    9/03/2009
Recorded at the request of     11:11 AM
Recording Service

09015358 7

Trustee's Sale No: 05-FMB-70872

# *FMB708720171000000*

## SUBSTITUTION OF TRUSTEE

**WHEREAS** ANTONIO A. JULIO AND CLEOPATRA U. JULIO, HUSBAND AND WIFE AS JOINT TENANTS was the original Trustor, and NEW CENTURY TITLE COMPANY was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 5/9/2005, and recorded on 5/20/2005 under Instrument No. 18380777, records of SANTA CLARA County, CALIFORNIA; and **WHEREAS**, IndyMac Federal Bank FSB, the undersigned, is the present Beneficiary under said Deed of Trust, and **WHEREAS** the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of said original Trustee thereunder,

**NOW, THEREFORE,** the undersigned hereby substitutes REGIONAL SERVICE CORPORATION, a California corporation, whose address is 616 1st Avenue, Suite 500, Seattle, WA 98104, as Successor Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

CA Sub

DATED: _3/4/09_.

* *effective 3/6/09*

IndyMac Federal Bank FSB

By _____
    Bethany Hood    Assistant Secretary
       (Name    Title)

STATE OF _Minnesota_ )
                     ) ss.
COUNTY OF _Dakota_   )

On _3/4/09_ _____, before me, Mark Bischof _____
Notary Public personally appeared _____Bethany Hood_____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____MN_____ that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC

MARK BISCHOF
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2013

2                                  CA Sub

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA  98104
Phone: (206) 340-2550 / Fax:

*Trustee Sale No.: 05-FMB-70872*

||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

**AFFIDAVIT OF MAILING**
**SUB-BY-CODE**

STATE OF WA              )

                                       ) ss.

COUNTY OF KING              )

I _Tammi Offord_ , being first duly sworn, state that I am now, and at all times
herein mentioned was a citizen of the United States a resident of the State of Washington, and over the
age of eighteen years, and my business address is set forth above.  On
_____6-2-09_____, I personally mailed a copy of the attached Substitution of Trustee,
prior to the recording thereof, in the manner provided in Section 2924b of the Civil Code of the State of
California, to the trustee of record under the Deed of Trust described in said Substitution and to all
persons whom a copy of the Notice of Default would be required to be mailed by the provisions of such
section.

_Tammi Offord_

SUBSCRIBED AND SWORN to before me   _6/ 2 / 2009_

_____
NOTARY PUBLIC in and for said County and State

ROBERT L. MOTTER
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
10-09-12

CA_SubByCodeAff

EXHIBIT "C"

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
OneWest Bank, FSB
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 49604550

DOCUMENT: 20689304

Pages      1

Fees ...      18.00
Taxes
Copies..
AMT PAID      18.00

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Recording Service

RDE #   011
4/26/2010
2:40 PM

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL DEPOSIT INSURANCE CORPORATION** as Receiver for First Federal Bank of California, a Federal Savings **Bank,** Santa Monica, CA, **WHOSE ADDRESS IS 401 Wilshire Blvd., Santa Monica, CA 90401, (ASSIGNOR)** by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with the certain note(s) described therein, without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to **OneWest Bank, FSB, WHOSE ADDRESS IS 888 E. WALNUT STREET, PASADENA, CA 91101, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**
Said Deed made by **ANTONIO A JULIO AND CLEOPATRA U JULIO** and recorded on 12/30/2003 as Inst# 17551668 in Book , Page in the office of the SANTA CLARA County Recorder, California.
Property more commonly known as: 3407 RIO BRAVO DRIVE, SAN JOSE, CA 95148

This assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

Dated:03/29/2010
**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for First Federal Bank of California, a Federal Savings Bank, Santa Monica, CA**

By:_____
    **BRYAN BLY   ATTORNEY-IN-FACT**

STATE OF FLORIDA        COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me this 29th day of March in the year 2010 by BRYAN BLY, well known to me to be the ATTORNEY-IN-FACT of FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for First Federal Bank of California, a Federal Savings Bank, Santa Monica, CA, a corporation, on behalf of the corporation.

_____
CRYSTAL MOORE DD 927242   Notary Public

My Commission expires: 09/23/2013
Prep by: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

OWBFA 11566320  CJ2488639

*11566320*

CRYSTAL MOORE
Notary Public, State of Florida
Commission # DD 927242
Expires September 23, 2013
Bonded Through National Notary Assn.

form5/FRMCA1